SO ORDERED.

Dated: December 8, 2016

Daniel P. Collins, Chief Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 13 Proceedings |
| **DANIELLE GAILYNN OWENS,** Debtor. | Case No.: 2:16-bk-02379-DPC |
| | Adversary No. 2:16-ap-00140-DPC |
| **DANNIELLE GAILYNN OWENS,** Plaintiff, | **UNDER ADVISEMENT RULING ON MOTIONS TO DISMISS DEBTOR'S SECOND AMENDED COMPLAINT (TRO, DECLARATORY RELIEF, TILA RESCISSION AND SLANDER OF TITLE IN CONNECTION WITH THE RESIDENTIAL MORTGAGE)** |
| v. | |
| **LSF9 MASTER PARTICIPATION; CALIBER HOME LOANS, INC.; SUMMIT SERVICES AND REALTY, LLC; BANK OF AMERICA, N.A.; JOHN DOE (INVESTORS) 1-10,000; and BLACK CORPORATION 1-10,** Defendants. | **(NOT FOR PUBLICATION)** |

The Court is asked to rule on two Motions to Dismiss ("Motions") (DE's 57 and 60)[1] Plaintiff's Second Amended Complaint (DE 48). The Motions were filed by Defendants LSF9 Master Participant Trust ("LSF9"), Caliber Home Loans, Inc. ("Caliber"), and Bank of America, N.A. ("BofA") (collectively hereinafter "the Defendants"). The Court concludes that, after considering arguments raised in pleadings and during oral argument, the Second Amended Complaint of Debtor, Dannielle Gailynn Owens ("Debtor"), is in part not well plead. Some of Debtor's counts fail to state a claim upon which relief may be granted.[2] Others are barred by the preclusive effect of prior court rulings.[3] However, Debtor's allegations regarding injunctive relief and declaratory relief shall, in part, survive the challenges contained in the Motions.

. . .

. . .

---

[1] DE shall hereafter refer to docket entries in the adversary file in this case.
[2] i.e. TILA Rescission and Slander of Title claims.
[3] i.e. Injunctive and Declaratory relief, at least through the date of the most recent court ruling.

1

## I. BACKGROUND

### A. Events Prior to the March 10, 2016 Bankruptcy

On August 23, 2006, Debtor borrowed $594,600 from First Magnus Financial Corporation ("FMFC") to purchase the residential property located at 136 N. Parkview Lane in Litchfield Park, Arizona 85340 ("Litchfield Property") where she currently resides. Debtor contemporaneously executed a Note ("Note") and Deed of Trust ("DOT") securing the Debt. The original DOT listed MERS as the beneficiary while BofA Home Loans Servicing, LLP ("BofA Servicing") was the servicer of the loan. In October of 2006, Debtor defaulted on the loan and subsequently filed a chapter 13 petition ("2007 Bankruptcy") in this Court before the Honorable Charles G. Case (2:07-bk-06793-CGC). The 2007 Bankruptcy was converted to a chapter 7 where Debtor received a chapter 7 discharge before the 2007 Bankruptcy was closed. There was no distribution to creditors in that case.

Years later, on September 2, 2009, the DOT was transferred from MERS to BofA Servicing, who appointed Recon Trust Co., NA ("Recon") as successor trustee under the DOT. Recon queued up a Trustee Sale of the Litchfield Property for December 8, 2009. As a result, Debtor filed a complaint in the Arizona Superior Court, Maricopa County ("State Court") before the Honorable Harriett Chavez, at case number CV 2009-070092 ("State Court Action"). After considering BofA Servicing's Motion to Dismiss, and Debtor's response, the State Court Action was dismissed with prejudice. Judge Chavez found "no basis for the claim that assignment of the Deed of Trust or subsequent notice of Trustee sale [was] not valid." (See CV 2009-070092 DE #19, DE #57 P. 33-4).

Debtor raised similar arguments in her complaint filed in the U.S. District Court, District of Arizona ("District Court"), before the Honorable James A. Teilborg at case number 2:10-cv-02696-JAT ("1st District Court Action"). There, Recon, BofA Servicing, BofA, and MERS filed a Motion to Dismiss Debtor's complaint. Debtor subsequently responded and these defendants

filed a reply.  On August 23, 2011, the District Court dismissed all six of Debtor's causes of action for failure to state a claim entitling Debtor to relief.  (AP DE #60 Exhibit B).

Two years later, the District Court heard a very similar case, this time presided over by the Honorable Susan R. Bolton at case number CV-13-02066 ("2nd District Court Action").  Judge Bolton ruled on a Motion to Dismiss, this time filed by CHL Mortgage Pass-Through Trust 2007-1, Park Granada, LLC, CWMBS, Inc., The Bank of New York, Recon, Countrywide Warehouse Lending, BofA, and MERS. In her December 20, 2013, ruling Judge Bolton analyzed the doctrine of claim preclusion, also known as res judicata, and found that all of the required elements were met.  (See CV-13-02066 DE 34, AP DE #60 Exhibit C).  The 2nd District Court Action was subsequently dismissed.

B. Events of the Bankruptcy

On March 10, 2016, (the "Petition Date") Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code.  (Administrative case, DE #1).  She subsequently initiated the instant adversary proceeding against the Defendants[4] by filing a Complaint on March 11, 2016. (DE #1). Debtor's first Complaint was never served.  Debtor subsequently filed an Amended Complaint on March 14, 2016.  (DE #3).  LSF9 and Caliber filed a Motion to Dismiss the Amended Complaint on May 9, 2016 (DE # 26).  Debtor subsequently sought and obtained the Court's approval to amend the Amended Complaint. (DE #35). The Second Amended Complaint ("SAC") was filed on July 11, 2016.  (DE #48).  Caliber and LSF9 filed a Motion to Dismiss the SAC on July 25, 2016.  BofA filed a Motion to Dismiss the SAC on August 10, 2016.  (DEs # 57 & 60). The Court heard oral argument on the Motions on October 11, 2016.  Debtor was given an opportunity to submit additional responsive pleadings following oral argument. (DE #73). Debtor's Memoranda of Points and Authorities in Opposition to the Motions to Dismiss was filed on October 21, 2016. (DE #78).  The Court subsequently took these matters under advisement.

. . .

---

[4] As well as Summit Services and Realty, LLC ("Summit") and various unidentified persons and entities.

3

**II. Issues**

1. Has the Debtor properly plead any new claims that were not otherwise addressed by the three previous rulings from the State Court and/or District Court?

2. If so, are the new claims plead with sufficient detail to survive the Defendants' Motions?

**III. Law**

1. <u>Motions to Dismiss</u>

In ruling on these Motions, the Court must apply the well-known standards detailed in the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

> "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555.

> A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Iqbal*, 556 U.S. at 663.

2. <u>Rule 8 of the Federal Rule of Civil Procedure</u>

The Federal Rules of Civil Procedure lay out the minimum pleading requirements in Rule 8:

(a) Claim for Relief. A pleading that states a claim for relief must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8

### 3. Issue Preclusion/Collateral Estoppel

In *In re Child*, the 9th Circuit BAP reversed the Bankruptcy Court's finding that a prior state court judgment had preclusive effect. The BAP carefully examined the doctrine of issue preclusion generally, as well as specifically under Arizona law.

> The doctrine of issue preclusion, or collateral estoppel, prohibits relitigation of issues that have been adjudicated in a prior action. *Kirkland v. Barnes (In re Kirkland),* 2008 WL 8444824, at *7 (9th Cir. BAP Nov. 26, 2008) (citing *Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez),* 367 B.R. 99, 104 (9th Cir. BAP 2007)). The party asserting issue preclusion bears the burden of proof as to all elements and must introduce a sufficient record to reveal the controlling facts and the exact issues litigated. *Kirkland,* 2008 WL 8444824, at *7 (citing *Kelly v. Okoye (In re Kelly),* 182 B.R. 255, 258 (9th Cir. BAP 1995)).
> . . .
> The rules of federal and state comity require that federal courts give prior state judgments the same preclusive effect as the courts of the state court that rendered the judgment. 28 U.S.C. § 1738 (2012). As a matter of full faith and credit, a federal court must determine the preclusive effect of a prior state court judgment by applying the issue preclusion law of the state of the court that rendered the prior judgment. *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. at 81, 104 S.Ct. 892; *Far Out Prods., Inc. v. Oskar,* 247 F.3d 986, 993 (9th Cir.2001); *Branam v. Crowder (In re Branam),* 226 B.R. 45, 51 (9th Cir. BAP 1998); *In re Nourbakhsh,* 67 F.3d at 800 (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)).

*In re Child*, 486 B.R. 168, 172 (B.A.P. 9th Cir. 2013).

The *Child* court set out the factors for issue preclusion, citing *Chaney Building Co. v. City of Tucson*, 148 Ariz. 571, 716 P.2d 28, 30 (1986), the seminal decision for issue preclusion under Arizona law.

> . . . [I]ssue preclusion is applicable when:

> (1) the issue or fact to be litigated **was actually litigated** in a previous suit,
> (2) a final judgment was entered, and
> (3) the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter,
> (4) **and actually did litigate it,** [and]
> (5) such issue or fact was essential to the prior judgment.

*Id.* At 172–73 (emphasis in original).

In *Garcia v. Gen. Motors Corp.*, 195 Ariz. 510, 514, 990 P.2d 1069, 1073 (Ct. App. 1999), the court explained that the factors which must be met for a finding of issue preclusion in federal court are virtually the same as the factors applied by Arizona state court. *Accord, Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 326, 75 S. Ct. 865, 867, 99 L. Ed. 1122 (1955) (Under the doctrine of collateral estoppel, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit.); *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (The doctrine of issue preclusion prevents relitigation of all "issues of fact or law that were actually litigated and necessarily decided" in a prior proceeding.); *In re Evans*, 161 B.R. 474, 477 (B.A.P. 9th Cir. 1993) (Collateral estoppel precludes relitigation of any issues of fact or law that were actually litigated and necessarily decided in the prior proceeding.).

### 4. Claim Preclusion/Res Judicata

In *Hoff v. City of Mesa*, the Supreme Court of Arizona explained the doctrine of res judicata as it applies under Arizona law*:*

> Briefly stated, the doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive as to every point decided therein and also as to every point raised by the record which could have been decided, with respect to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. *Lauderdale v. Industrial Commission*, 60 Ariz. 443, 139 P.2d 449; *O'Neil v. Martin*, 66 Ariz. 78, 182 P.2d 939; *Taylor v. Betts*, 59 Ariz. 172, 124 P.2d 764 and *Shattuck v. Shattuck*, 67 Ariz. 122, 192 P.2d 229.

86 Ariz. 259, 261, 344 P.2d 1013, 1014 (1959).

The U.S. Supreme Court has held that in determining whether or not a claim is barred by claim preclusion, a court should consider three factors:

> The defense of res judicata or claim preclusion requires the following three elements: (1) an identity of claims in the suit in which a judgment was entered and the current litigation; (2) a final judgment on the merits in the previous litigation; and (3) identity or privity between parties in the two suits.

*Blonder-tongue Lab. V. University of Ill. Found.*, 402 U.S. 313, 91 S. Ct. 1434 (1971).

The 9th Circuit has expounded on what is required for meeting the first factor, identity of claims:

> Whether the two suits involve the same claim or cause of action requires us to look at four criteria, which we do not apply mechanistically: (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.

*Myopo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (citation omitted).

5. <u>TILA Right of Rescission</u>

Title 15 of the United States Code section 1635 details a borrower's right to rescission in certain consumer credit transactions.

> **(a) Disclosure of obligor's right to rescind**
> Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Bureau, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Bureau, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

Paragraph (e) of section 1635 deals with transactions that are exempted from the right of rescission created under paragraph (a).

> . . .
> **(e) Exempted transactions; reapplication of provisions**
>   This section does not apply to—
>     **(1)** a residential mortgage transaction as defined in section 1602(w) of this title;
>     **(2)** a transaction which constitutes a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property;
>     **(3)** a transaction in which an agency of a State is the creditor; or
>     **(4)** advances under a preexisting open end credit plan if a security interest has already been retained or acquired and such advances are in accordance with a previously established credit limit for such plan.

Note that § 1602(w) referenced in § 1635(e)(1) was redesignated §1602(x) by Pub. L. 111-203, title X, § 1100A(1)(A), July 21, 2010, 124 Stat. 2107. Therefore, when reading 11 U.S.C. § 1635(e)(1), "residential mortgage transactions" is defined by 11 U.S.C. § 1602(x), which reads:

> **(x)** The term "residential mortgage transaction" means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling.

The United States District Court for the Southern District of New York further explained the availability of rescission under 11 U.S.C. §1635 in *Grimes v. Fremont Gen. Corp.*:

> [C]ertain types of transactions are specifically exempted from this right of rescission, including "a residential mortgage transaction." *Id.* § 1635(e)(1); *see also Ng v. HSBC Mortg. Corp.,* No. 07–CV–5434, 2010 WL 889256, at *2 (E.D.N.Y. Mar. 10, 2010) (noting that § 1635(a) "is wholly inapplicable in the context of residential mortgages"); *Eubanks v. Liberty Mortg. Banking Ltd.,* 976 F.Supp. 171, 174 (E.D.N.Y.1997) ("Rescission is not an available remedy for residential mortgages."). A residential mortgage transaction is defined as one in which "a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(w); *see also Ng,* 2010 WL 889256, at *8.

785 F. Supp. 2d 269, 284 (S.D.N.Y. 2011).

The right to rescission under §1635 is also time-limited according to subsection 1635(f):

**(f) Time limit for exercise of right**
An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor, except that if (1) any agency empowered to enforce the provisions of this subchapter institutes a proceeding to enforce the provisions of this section within three years after the date of consummation of the transaction, (2) such agency finds a violation of this section, and (3) the obligor's right to rescind is based in whole or in part on any matter involved in such proceeding, then the obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the earlier sale of the property, or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later.

The U.S. Supreme Court has had occasion to address rescission under 11 U.S.C. § 1635 in the case of *Jesinoski v Countrywide Home Loans, Inc*,. 135 S. Ct. 790, 791 (2015). The borrowers in *Jesinoski* were borrowing in order to <u>refinance</u> their home loan.

> On February 23, 2007, petitioners Larry and Cheryle Jesinoski refinanced the mortgage on their home by borrowing $611,000 from respondent Countrywide Home Loans, Inc.

*Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 791 (2015).

6. <u>Slander of Title</u>

The Arizona Revised Statutes at section 33-420 details a cause of action for knowingly recording false documents. Case law further explains the factors for a successful slander of title claim:

> The elements of slander of title, in this case slander of the leasehold interest, are the uttering and publication of the slanderous words by the defendant, the falsity of the words, malice and special damages.

*City of Tempe v. Pilot Properties, Inc.*, 22 Ariz. App. 356, 363, 527 P.2d 515, 522 (1974).

The malice element of a slander of title claim is further detailed in *Barnett v. Hitching Post Lodge, Inc.*:

> In an action for slander of title, the recording of an unfounded claim is actionable only where the defendant's act is malicious, that is, where it is done from improper motives or without reasonable belief in the efficacy of the claim.

*Barnett v. Hitching Post Lodge, Inc.*, 101 Ariz. 488, 493, 421 P.2d 507, 512 (1966).

**IV. Analysis**

Before examining the claims raised in each count of the SAC, the Court notes that the SAC does not adhere to Rule 8 of the Federal Rule of Civil Procedure. Fed. R. Civ. P. 8. Rule 8(a)(2) requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* The SAC is neither short nor plain. Rather, it rambles on for 45 pages often repeating earlier points and regularly perplexing the reader. However, the Court will not make a dispositive ruling based on these shortcomings. Instead, the Court will address the issues raised in the SAC, albeit in an order differing from the order raised by Debtor.

1. <u>TILA Rescission</u>

The Debtor alleges a rescission of the loan transaction. Supposedly, Debtor mailed a Notice of Rescission ("NOR") to Bank of America at some point. Debtor admitted at oral argument that she did not have a copy of the document she mailed, but argued that she could substantiate its existence by an acknowledgement made by Caliber in a letter dated November 10, 2015, as well as a self-serving letter from Debtor to Caliber (the Qualified Written Request "QWR"). (DE 48, Exhibits C and G). Debtor's argument is that, under 15 U.S.C. §1635(a), she has a right to rescind the loan transaction either by midnight of the third business day following the consummation of the transaction, or the date that she receives certain disclosures required under the TILA statute from the lender, whichever is later. She claims that because she never received disclosures from Bank of America, she was able to rescind the transaction by mailing BofA the NOR, and in fact did so.

Debtor's argument fails for a number of reasons. First, since neither party has produced the NOR, the exact timing of the date the NOR was sent is unknown. Debtor has not plead facts sufficient to establish that her NOR was timely mailed under 15 U.S.C. §1635(f).[5] Section §1635(f) places a three-year limitation on the right to rescission created under 15 U.S.C. §1635(a). The only dates the Court has relative to the rescission are the November 10, 2015 letter from Caliber (Exhibit C to the SAC) and the November 24, 2015 QWR (Exhibit G to the SAC) stating that the NOR was mailed February 1, 2010. The Court reads the QWR (Exhibit G) to be an admission by Debtor that the only NOR sent by Debtor was the February 1, 2010 NOR in Caliber's possession. Since the loan transaction was originally consummated on August 23, 2006, Debtor's right to rescission lapsed on August 23, 2009, more than 6 years before the Caliber letter and QWR, and 162 days after February 1, 2010. Debtor's rescission claim is time barred.

Even assuming that the Debtor was to allege the date of the NOR fell within the statutory requirements of 15 U.S.C. §1635(f), her rescission cause of action would still fail because residential mortgage transactions are exempted from the right to rescission created under 15 U.S.C. §1635(a), as detailed in 15 U.S.C. §1635(e) and 15 U.S.C. §1602(x). Debtor's Note and DOT were executed as a part of the exact type of transaction defined under 15 U.S.C. §1602(x), and exempted under 15 U.S.C. §1635(f)(1). In *Grimes v. Freemont Gen. Corp.*, the District Court for the Southern District of New York explained that "certain types of transactions are specifically exempted from this right of rescission, including 'a residential mortgage transaction.'" *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 284 (S.D.N.Y. 2011).

The Debtor has cited *Jesinoski v. Countrywide Home Loans, Inc.* in support of her rescission argument. However, the facts in *Jesinoski* are distinguishable from the facts here because the borrowers in that case were borrowing money to refinance their home loan, not to finance the initial acquisition of their home. *Jesinoski* at 791.

---

[5] See, for example, paragraphs 61 and 265 of the SAC where Debtor simply states ". . . Plaintiff rescinded the alleged transaction by sending a NOR, pursuant to 15 U.S.C. § 1635(a) to alleged creditor BAC."

11

Debtor's TILA rescission claims are also barred by collateral estoppel as they could and should have been raised in at least one of the Three Previous Lawsuits. See Section IV(2), below.

Count III alleges that Debtor's 2006 loan was rescinded and, therefore, the Note and DOT are unenforceable. For the reasons noted above, Count III is dismissed. All three remaining counts also rely in part on Debtor's rescission argument. To the extent that Counts I, II and "IV"[6] rely on the rescission argument, those counts are dismissed with prejudice. Additionally, allowing the Debtor to amend Count III or the "rescission" portions of Counts I, II and IV of the SAC would be an exercise in futility as she cannot maintain a plausible TILA rescission claim.

2. The Preclusive Effect of the Three Previous Court Rulings

Debtor argues that prior to any alleged assignment, sale, or transfer of rights in the DOT by BofA, the Note and DOT were void by operation of law. (See e.g. SAC at ¶88, Ln 24-6). She further argues that BofA cannot transfer rights that it does not own so its assignments to LSF9 and Summit were nullities. (See e.g. SAC at ¶110-12). Whether or not BofA possessed rights under the Note and DOT are issues that were addressed in the State Court Action, the 1st District Court Action, and the 2nd District Court Action (collectively the "Three Previous Lawsuits"). To the extent that the SAC attacks BofA's rights under the Note and DOT for events that occurred prior to Judge Bolton's December 20, 2013 ruling, any such claims are barred by the preclusive effects of the rulings in the Three Previous Lawsuits.

a. Issue Preclusion/Collateral Estoppel

> . . . [I]ssue preclusion is applicable when:
> (1) the issue or fact to be litigated **was actually litigated** in a previous suit,
> (2) a final judgment was entered, and
> (3) the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter,
> (4) **and actually did litigate it,** [and]

---

[6] Debtor's slander of title claim is identified as Count III. Her TILA rescission cause of action is also identified as Count III. The Court will hereafter refer to the slander of title claim as Count IV.

12

(5) such issue or fact was essential to the prior judgment.

*Chaney*, 148 Ariz. at 573, 716 P.2d at 30 (emphasis in original). Applied here, factor one is met as the issue of BofA's right to enforce the Note and DOT were the subject of the State Court Action, (DE 57, P. 33-4). There, Judge Chavez ruled, "[t]here is no basis for the claim that assignment of Deed of Trust or subsequent notice of Trustee sale is not valid." Further, the same issue appeared before Judge Teilborg in the 1st District Court action. In his ruling's Analysis and Conclusion section under part "A. Count 1." (DE #60 Exhibit B), Judge Teilborg found that the Debtor had failed to state a claim for "invalidity, unenforceability, or voidness . . ."

The second factor, requiring a final judgment, was met when Debtor failed to timely appeal Judge Chavez's ruling or Judge Teilborg's order or Judge Bolton's order. The third and fourth issue preclusion factors are satisfied because Debtor had the opportunity to litigate these matters and actually did litigate them, as demonstrated by her filing of responsive pleadings in those actions prior to the entry of the final judgments. Finally, the validity of the Note and DOT and their subsequent assignments were at the heart of those actions, therefore that issue was essential to each of the final judgments.

The Court concludes that the validity of BofA's rights in the Note and DOT and, therefore, its right to assign the Note and DOT is precluded from being raised again under the doctrine of issue preclusion because any such claims arise from events that occurred prior to Judge Bolton's December 20, 2013 ruling. For the same reasons, Debtor's TILA rescission claims are barred by collateral estoppel. The Court acknowledges that the SAC, at least in part, challenges the validity of transfers that occurred after Judge Bolton's December 20, 2013 ruling. (See DE #48 Exhibit A & D). The Court will address the issues as they relate to these transfers in §IV, part 3 below as they are not precluded by the rulings in the Three Previous Lawsuits.

b. Claim Preclusion/Res Judicata

Three factors are to be considered when determining if a claim is barred by claim

13

preclusion, a court should consider:1) an identity of claims in the suit in which a judgment was entered and the current litigation;

>   (2) a final judgment on the merits in the previous litigation; and
>   (3) identity or privity between parties in the two suits.

*Blonder-tongue Lab. V. University of Ill. Found.*, 402 U.S. 313, 91 S. Ct. 1434 (1971).

The 9th Circuit has expounded on what is required for meeting the first factor, identity of claims:

> Whether the two suits involve the same claim or cause of action requires us to look at four criteria, which we do not apply mechanistically: (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.

*Myopo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (citation omitted). To the extent that Debtor's claims arise from events from prior to Judge Bolton's December 20, 2013 ruling, they arise out of the same transactional nucleus of the Three Prior Lawsuits. As discussed above, the Three Previous Lawsuits dismissed claims that the DOT and Note evidencing Debtor's purchase of the Litchfield Property were somehow void or invalid. Therefore, the second and third factors for an identity of claims are met. Finally, to the extent that any claims arise from events that occurred prior to Judge Bolton's December 20, 2013 ruling, they are based on the same evidence previously presented. The Court therefore finds that an identity of claims exists and the first factor for claim preclusion is met.

As to the second factor requiring a previous judgment, the Court has already addressed that factor above and concluded that it was met by both Judge Chavez's ruling and Judge Teilborg's order. Finally, the third factor of privity between parties is met. BofA was a party in the previous cases, and LSF9 and Caliber are allegedly subsequent transferees of BofA's rights under the assigned DOT.

. . .

14

This Court also acknowledges that Judge Bolton's order undertook an analysis of claim preclusion in granting the motion to dismiss in the 2nd District Court Action. This Court gives full faith and credit to that legal finding and is legally bound to do so. The Court therefore concludes that BofA's right to assign the Note and DOT is precluded from being raised again under the doctrine of claim preclusion to the extent that any such claims arise from events that occurred prior to Judge Bolton's December 20, 2013 ruling.

3. <u>Declaratory Judgment and Injunctive Relief</u>

Much of Counts I and II are repetitive and irrelevant. Many of the arguments raised in Counts I and II have already been dispensed with in the previous two sections dealing with the TILA rescission and the preclusive effects of the rulings in the Three Prior Lawsuits. However, Debtor points out a discrepancy relating to the ownership of the Note and/or DOT that was not previously addressed. Exhibit A to the SAC is a copy of a letter from BofA to Debtor. (DE #48, Exhibit A). It states that the residential loan was transferred to a new creditor, BofA Merrill Lynch Asset Holdings, Inc. ("BofA Merrill"), on March 18, 2014. *Id*. There is no plausible claim plead as to the invalidity of this transfer. However, nearly a year after the BofA to BofA Merrill transfer, on March 27, 2015, Debtor received another letter from BofA. (DE #48 Exhibit D). This letter asserted that BofA was ". . . the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust for the referenced loan." (DE #48 Exhibit D). Approximately three months after this second letter, LSF9 recorded the Assignment of DOT from BofA on June 30, 2015. (DE #63 Exhibit 8). The Court has been unable to reconcile these transactions. It is unclear how BofA could transfer the loan to BofA Merrill on March 18, 2014, but still be the assignee of the DOT on March 27, 2015, and then subsequently transfer the beneficial interest under the DOT to LSF9 on June 30, 2015. Debtor argues that, at the time of the BofA to LSF9 transfer, BofA Merrill was the holder of DOT, not BofA. The Court believes that this is the sole issue plead in the SAC that is facially plausible and not either time barred, barred by the preclusive effect of the rulings in the

15

Three Previous Lawsuits, or otherwise improperly plead.

The Court is therefore dismissing with prejudice Counts I and II but only to the extent that they attempt to argue that there is no Note or that BofA is or was not a holder of either the Note or a beneficial interest under the DOT. Debtor has made a facially plausible claim that the transfer from BofA to LSF9 may be invalid. Since that alleged transfer occurred after Judge Bolton's December 20, 2013 ruling, the causes of action related to the BofA to LSF9 transaction are not precluded by the Three Previous Lawsuits' rulings.

4. <u>Slander of Title</u>

The only remaining cause of action not yet addressed above is Debtor's Slander of Title action raised in Count IV of the SAC. Debtor argues that this cause of action falls under A.R.S. 33-420(A)-(D). Essentially, Debtor argues that BofA, by assigning the DOT to LSF9, recorded a false document, an offense actionable under A.R.S. 33-420. Debtor's argument that the assignment of the DOT was false once again relies on the allegation that BofA did not have rights in the Note or DOT and therefore had no ability to transfer rights to Caliber or LSF9. (DE 48, ¶297). Debtor also nakedly asserts that certain loan documents were forged before being recorded. (DE 48, ¶303).

The Arizona Revised Statutes at section 33-420 details a cause of action for knowingly recording false documents. Case law further explains the factors for a successful claim:

> The elements of slander of title . . . are the uttering and publication of the slanderous words by the defendant, the falsity of the words, malice and special damages.

*City of Tempe v. Pilot Properties, Inc.*, 22 Ariz. App. 356, 363, 527 P.2d 515, 522 (1974). The malice element of a slander of title claim is further detailed in *Barnett v. Hitching Post Lodge, Inc.*:

> In an action for slander of title, the recording of an unfounded claim is actionable only where the defendant's act is malicious, that is, where it is done from improper motives or without reasonable belief in the efficacy of the claim.

16
Case 2:16-ap-00140-DPC    Doc 83    Filed 12/08/16    Entered 12/08/16 15:54:07    Desc
Main Document    Page 16 of 18

101 Ariz. 488, 493, 421 P.2d 507, 512 (1966). The Court finds that debtor has not so much as provided "a formulaic recitation of the elements of a cause of action," as contemplated under *Twombly*. 550 U.S. at 555. Debtor also makes the conclusory statement that "[t]he recordings were done with malice; acting with reckless regard for the statements truth or falsity, improper and unlawful motives with the intent to deceive and defraud Plaintiff out of her property and property rights." (DE 48, ¶ 312). *Iqbal* states, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). There is no plausible factual basis provided by Debtor to demonstrate that BofA or LSF9 recorded assignments of the DOT with malice, which is of course a requirement for a successful slander of title claim. Without a plausible allegation of malice, Debtor's slander of title claim fails.

For these reasons, the Court finds that Debtors claim for slander of title is not well plead and is therefore dismissed. The Court will provide Debtor thirty days from the date of entry of this ruling to amend this cause of action to include sufficient plausible facts to substantiate a cause of action for slander of title.

**V. Conclusion**

The Court has considered the arguments raised in the Motions filed by BofA, Caliber and LSF9 as well as the Response filed by Debtor. Much of the SAC alleged claims that were barred by the preclusive effect of prior rulings in the State Court as well as the District Court. The Court has, however, acknowledged two transactions that occurred after Judge Bolton's December 20, 2013 ruling. The Court finds no plausible claim plead that would challenge the validity of the March 18, 2014 transfer from BofA to BofA Merrill. To the extent that a cause of action may have arisen from BofA's June 30, 2015 transfer to LSF9, the Court has allowed such claim to survive the Motions.

For these reasons,

1    **IT IS ORDERED** partially granting Defendants' Motions as to Counts I & II. Counts I and II are dismissed with prejudice to the extent they are grounded in transactions that occurred prior to June 30, 2015 and survive only as they relate to the validity of the June 30, 2015 alleged transfer from BofA to LSF9.

**IT IS FURTHER ORDERED** granting Defendants' Motions as to Count III, the alleged TILA rescission. Count III is dismissed with prejudice.

**IT IS FURTHER ORDERED** granting Defendants' Motions as to Debtor's Count IV, for slander of title. The Court will allow Debtor thirty days from the date of entry of this ruling to amend that claim to include a plausible factual basis for the existence of the required malice element.[7]

**So ordered.**

      **DATED AND SIGNED ABOVE.**

COPY of the foregoing mailed by the BNC and/or
sent by auto-generated mail to interested parties.

---

[7] As noted above, the Court has identified at least three BofA entities in the SAC and Motions, namely "BofA", "BofA Servicing" and "BofA Merrill." BofA entities have also been identified variously by the parties as the servicer and holder of the Note and holder of the beneficial interest under the DOT. The Court suspicions that the Debtor (and to some degree the Court) are puzzled by which BofA entity is involved with which transactions and whether a given BofA entity is acting as a servicer or is the holder of the Note and/or DOT. The Court makes this observation in hopes that the parties will hereafter clearly identify which BofA entity is wearing which hat.